## Myers v. Myers

*Harry Alvan Baird* and *B. L. Haag*, for libellant.
*S. D. Gettig* and *F. C. Gross*, for respondent.

FLEMING, P. J., forty-ninth judicial district, specially presiding, September 23, 1931.—On July 16, 1920, in an opinion and decree overruling the report of a master, the then sitting court awarded a divorce a vinculo matrimonii to the libellant, with an allowance to the respondent of permanent alimony to continue so long as the respondent remained unmarried. The respondent has not remarried, and the libellant has fully complied with the court's order until a date approximating the awarding of the rule now before us, wherein libellant seeks a vacation of that part of the decree in divorce which awards such permanent alimony.

Three reasons are assigned in support of such rule, to wit: (1) That the decree awarding such alimony was not made and entered upon the basis of any well-defined, clear or authentic testimony or finding of fact as to the libellant's income or ability to pay the same; (2) that the libellant was not at the time the said decree was made, nor has he since been, in a position to comply with such decree without unduly burdening himself and feeling the hardship caused thereby; and (3) that the respondent has made no effort to secure employment or to earn any money, but is avoiding the same in order to vex and annoy the libellant.

We find no merit in the last two reasons assigned. If the order for alimony was excessive at the time of its making, the libellant could have obtained a proper review of the same had he so desired. On the contrary, however, he has faithfully complied with such order for a decade, indicating conclusively that it was not more than he could pay, as he *has* paid it. Nor is the order contingent upon the condition that the respondent augment it by her own labors. The ties of matrimony were wholly severed by the decree in divorce, and no legal obligations remained upon the libellant as to the sufficiency of the wife's maintenance. He was to pay the stipulated sum, no more and no less, regardless of the respondent's necessities, and having done so, it was legally impossible for him to be vexed or annoyed by the respondent's failure to be employed.

The first reason, however, creates a necessity for a careful consideration of divorce legislation in Pennsylvania, in so far as alimony is concerned.

At the common law alimony was unknown. Blackstone, in his Commentaries, speaks of alimony in connection with divorce a mensa et thoro as a kind of esto-

ver to which a wife, living separate and apart from her husband, may be entitled, but nowhere does he speak of alimony as an attribute in absolute divorce.

In 1785, an act was passed in Pennsylvania providing that an injured wife might be allowed a temporary sort of alimony after she had been granted a divorce from bed and board, such alimony to continue until reconciliation of the parties. This act was entitled "An act concerning divorces and alimony." No alimony in connection with an absolute divorce is mentioned.

The Act of April 2, 1804, 4 Sm. Laws 182, passed as a supplement to the Act of September 19, 1785, 2 Sm. Laws 343, gave to the judges of the court of common pleas the authority to hear and determine actions in divorce, which had previously been vested solely in the Supreme Court.

On March 13, 1815, the legislature passed "An act concerning divorces" (6 Sm. Laws 286), the purpose of which appears to have been to consolidate all our divorce laws into one general act, for it repealed all prior acts on the subject and lodged sole jurisdiction in the court of common pleas. No reference to permanent alimony is made in such act.

It was not until the Act of May 8, 1854, P. L. 644, that a husband could avail himself of the cause similar to that for which the wife alone, under an act of 1815, could apply. The Act of 1854 is a supplement to the Act of 1815, and is as follows: "Be it enacted, . . . that, in addition to the cases now provided for by law, it shall be lawful for the courts of common pleas of this Commonwealth to grant divorces in the following cases: . . . 3. Where the wife shall have, by cruel and barbarous treatment, rendered the condition of her husband intolerable or life burdensome: Provided, that in cases of divorce under this act, if the application shall be made on the part of the husband, the court granting such divorce, shall allow such support or alimony to the wife as her husband's circumstances will admit of, and as the said courts may deem just and proper."

The Act of June 25, 1895, P. L. 308, amends this act by adding after the words "cruel and barbarous treatment" the words "or indignities to his person," and further amends such Act of 1854 by substituting for the words "shall allow" the words "may allow," thus making the allowance of alimony discretionary.

The Act of April 4, 1925, P. L. 124, further amends the Acts of 1854 and 1895 by removing entirely the provision regarding alimony mentioned above.

The most recent legislation on the subject, The Divorce Law of 1929, approved May 2, 1929, P. L. 1237, makes no mention whatsoever of permanent alimony except in cases where either spouse is insane. The grounds of "cruel and barbarous treatment" or "indignities to the person" are available to each spouse, and no mention of support or alimony is made in such cases.

We note, therefore, that historically, alimony has never been an incident of absolute divorce in Pennsylvania as a complete matter of right except from 1854 to 1895. From this latter year until 1925 it was a right solely contingent upon the discretion of the court, and since then it has not existed except in the case of insanity of one of the spouses.

The divorce in the instant case was granted July 16, 1920, during that interval when the awarding of alimony was discretionary with the court. We have carefully considered the testimony taken before the master, as well as the master's report, wherein he recommends the dismissal of the libel. Both are wholly silent as to libellant's ability to pay alimony. We have also carefully read the opinion of the then sitting court and find it wholly devoid of any reference to libellant's ability to pay. The order appears to have been based upon the presumption that "the respondent is apparently destitute of any separate estate of her own," rather than upon the libellant's ability to pay.

In Heller *v.* Heller, 27 Dist. R. 385 (1918), the court says: "In order to fix a proper and reasonable sum for permanent alimony, the husband's circumstances and ability to pay should affirmatively appear." Further, citing the Act of 1895, the same court says: "No reason is perceived for holding that this act has removed the necessity of a consideration of the circumstances of the husband in order to award such alimony as inquiry might show to be 'just and proper.'" In this case the master's report was referred back to him to ascertain the libellant's circumstances and ability to pay alimony. The same procedure appears in Hocking *v.* Hocking, 12 Dist. R. 82 (1902).

In the instant case, we have heard the testimony as to libellant's present ability to pay. The past does not interest us, as it is no longer material, the libellant having fully met previous requirements to the date of the granting of the rule now under consideration. He appears to be "property poor." He owns several small pieces of real estate, but to sell the same in the present market would entail undue and improper sacrifices. There appears to be no present rental value in the same, nor is his income sufficient to meet the order now existing and at the same time meet taxes, insurance and repairs upon what estate remains. Whether his faithful compliance with the court's order for the past eleven years has contributed to his present condition, or not, we cannot say. We are certain, however, that such order was not based, at its making, upon an investigation of libellant's true circumstances, but was made upon the court's presumption of respondent's destitution growing out of a severance of the then existing marriage relation.

This was improper at the time the divorce was granted, and, in the light of changed social conditions, is even more so today. It is wholly inconsistent for a court to decree that all "duties, rights and claims" accruing to either of the parties to an action in divorce, by reason of their marriage, "shall cease and determine," and that the parties "shall severally be at liberty to marry again in like manner as if they had never been married," and then to entail upon the husband an obligation to pay the offending party any sum. The husband, generally speaking, is either entitled to a divorce absolute or he is not. If he is, he should be restored to the single state, with no obligations to the offending wife whatsoever, for it is her course of conduct, duly proven and judicially determined, which gives him the relief sought under the law. The support and maintenance of children, if any, does not enter the question in any way, for a due remedy exists in the quarter sessions to compel a divorced father to support and maintain his children. If the conduct of the wife has not been sufficient to meet the requirements of the law as to cause for divorce, the legal obligation of the husband to support and maintain his wife continues and may be enforced in the quarter sessions also.

"Institutions . . . are not the creations of single minds, nor are they product of a separate age. They are the result of evolutionary processes, and they progress as social conditions change:" Hon. Hampton L. Carson—Bicentennial of Supreme Court, 273 Pa. xxxiii. When it becomes a familiar and accustomed thing for women to go out in the world to earn their own livelihood, as it is today; when women are, of right, equal with men, both as to such right and as to remedy, as they now are; and when the misconduct of the wife is such as to meet the requirements of divorce as laid down by the legislature, there is no just reason why the husband should be burdened with a further obligation of support. As has been said: "The change is not radical by reason of the new law, but by reason of the new social views and conditions, in which women are taking their part in the world's work side by side with men."

In the instant case, both the testimony taken before the master and the reasons assigned by the then sitting court, in its opinion filed, are amply sufficient to support the award of an absolute divorce to the libellant. The record, however, in no manner supports the award of permanent alimony. That the libellant was in a position to pay anything cannot be presumed. It must be proven. This was not done.

Since the then sitting court solemnly terminated all duties, rights and claims accruing to either the libellant or the respondent, the libellant has paid to the respondent approximately $6000—and this, in the face of the record, wholly silent as to his ability to pay, but clearly showing a course of conduct on the part of the respondent sufficient to meet the prescribed statutory cause of divorce. We are of the opinion that the libellant has not only met his legal obligation, but has far exceeded any moral obligation which may have existed between him and the respondent at the time their marital ties were severed.

The respondent, at the time this matter was heard before us, presented a further petition for a rule to show cause why an order for counsel fees expended or incurred in defending the present action should not be allowed. It was reasonable and proper that the respondent should be represented here.

And now, September 23, 1931, upon consideration of the whole record, it is ordered, adjudged and decreed that upon payment by libellant of the alimony at the rate and in the amount mentioned in the decree of July 14, 1920, to this date, and the further payment to the respondent of the sum of $50 for counsel fees in this proceeding, that portion of said decree of July 14, 1920, reading as follows, "and the court do further award to Ida Myers the sum of $75 additional counsel fees and permanent alimony at the rate of $11 per week, so long as respondent shall remain unmarried," be revoked, vacated and set aside, and payment of such permanent alimony by the libellant to the respondent no longer required.

From W. E. Shaffer, Lock Haven, Pa.